NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILSON CAMPBELL,<br><br>         Plaintiff,<br><br>         v.<br><br>SUPREME COURT OF NEW JERSEY,<br>JUDGE MAURICE GALLIPOLI, et al.,<br><br>         Defendants. | Civil Action No. 11-555 (ES)<br><br>OPINION |

SALAS, DISTRICT JUDGE

This matter comes before the Court on Plaintiff Wilson Campbell's motion for reconsideration of the Court's December 23, 2014 Opinion and Order granting Defendant the Honorable Maurice Gallipoli's motion for summary judgment. (D.E. No. 104). Campbell also seeks leave to file a motion for sanctions pursuant to Federal Rule of Civil Procedure 11. (D.E. No. 113). The Court has considered the parties' submissions and decides the motion and request without oral argument pursuant to Federal Rule of Civil Procedure 78(b). Based on the reasons discussed below, the Court DENIES Campbell's motion for reconsideration and GRANTS leave to file a motion for sanctions.

I.    PROCEDURAL BACKGROUND

For the purposes of the instant motion, the Court relies on the facts discussed in the December 23, 2014 Opinion granting Gallipoli's summary judgment motion (the "Opinion"). (D.E. No. 101, Summary Judgment Opinion ("Op.")).

On May 15, 2014, Gallipoli filed a motion for summary judgment as to Campbell's discrimination and retaliation claims under the New Jersey Law Against Discrimination

1

("NJLAD"). (D.E. No. 87). Campbell's Brief in Opposition to Defendant's Motion for Summary Judgment contained allegations that Gallipoli engaged in numerous discriminatory and retaliatory acts, including allegations that Gallipoli retaliated against Campbell for his involvement in an interracial relationship. (D.E. No. 88, Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment ("Pl. Summ. J. Br.") at 19-22). After review, the Court concluded that Campbell failed to meet his *prima facie* burden of establishing discrimination and retaliation under the NJLAD and granted Gallipoli's motion for summary judgment. (Op. at 1).

Thereafter, Campbell filed the instant motion for reconsideration. (D.E. No. 104). Campbell asserts that the Court committed legal error by concluding that interracial relationships do not fall within the reprisal protections of the NJLAD. (D.E. No. 104-1, Brief in Support of Plaintiff's Request for Reconsideration ("Pl. Mov. Br.") at 1). Gallipoli timely filed an opposition. (D.E. No. 106). Campbell replied.[1] (D.E. No. 107).

Gallipoli subsequently filed a sur-reply. (D.E. No. 110). In response, Campbell sought leave to file a motion for sanctions against Gallipoli. (D.E. No. 113). According to Campbell, Gallipoli made material misrepresentations to the Court regarding his status as Campbell's supervisor. (D.E. No. 113, Plaintiff's Letter Request ("Pl. Ltr.") at 1).

The Court will address Campbell's motion for reconsideration and request for leave to file a motion for sanctions in turn.

---

[1] Pursuant to Local Civil Rule 7.1(d)(3) "[n]o reply papers shall be filed, unless permitted by the Court, relating to the following motions: . . . Reconsideration under L. Civ. R. 7.1(i) . . . ." L. Civ. R. 7.1(d)(3). Campbell filed his reply brief without permission of the Court. Nevertheless, the Court considered Campbell's reply brief for the purposes of the instant motion for reconsideration.

## II.     DISCUSSION

### A.  Motion for Reconsideration

A motion for reconsideration is a limited device.  *Woodson v. Unknown Agents of Unknown Agency*, No. 14-7033, 2015 WL 71156, at *2 (D.N.J. Jan. 6, 2015).  "The purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence."  *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)) (internal quotation marks omitted).  As such, a motion for reconsideration may be granted only upon the showing of one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."  *Id.*  "To support reargument, a moving party must show that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision."  *Assisted Living Assoc. of Moorestown, L.L.C. v. Moorestown Twp.*, 996 F. Supp. 409, 442 (D.N.J. 1998).  By contrast, mere disagreement with the district court's decision is not an appropriate ground for a motion for reconsideration; such disagreement should be raised through the appellate process.  *Id.*  (citing *Bermingham v. Sony Corp. of Am., Inc.*, 820 F. Supp. 834, 859 n.8 (D.N.J. 1992)); *see also Drysdale v. Woerth*, 153 F. Supp. 2d 678, 682 (E.D. Pa. 2001) (holding that a motion for reconsideration may not be used to reargue matters already argued and disposed of by the court).

In opposition to Gallipoli's motion for summary judgment as to retaliation, Campbell asserted that: (1) before Campbell filed a formal EEO complaint, Gallipoli retaliated against him for engaging in an interracial relationship; (2) judiciary officials released information about his EEO case against Gallipoli; and (3) Judge Rodriguez changed his schedule after he filed the EEO

complaint. (Pl. Summ. J. Br. at 19, 23, 25). As to Campbell's first claim of retaliation—that Gallipoli retaliated against him for engaging in an interracial relationship prior to filing the EEO complaint—the Court held that "engaging in an interracial dating relationship is not protected activity under the NJLAD," and thus, Campbell failed to establish a *prima facie* case of retaliation. (Op. at 16).

On the instant motion for reconsideration, Campbell asserts that the Court committed manifest error when it concluded that interracial relationships are not protected under the NJLAD. (Pl. Mov. Br. at 4-6). Campbell avers that both New Jersey state courts and federal courts in our sister circuits have recognized that interracial relationships are protected, and that he met his *prima facie* burden of establishing retaliation under the statute. (*Id.* at 4-5). In particular, Campbell cites a string of cases holding that interracial relationships are protected under the NJLAD and Title VII. (*Id.*). It appears, however, that Campbell is conflating discrimination and retaliation.

The NJLAD's anti-retaliation provision makes it illegal "[f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under [the] act . . . ." N.J.S.A. 10:5–12(d). In order to establish a *prima facie* case of retaliation under the NJLAD, the plaintiff must show "(1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action." *Sgro v. Bloomberg L.P.*, 331 F. App'x 932, 939 (3d Cir. 2009) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)). "Protected activity" is defined as "challenges to discrimination prohibited by the NJLAD." *Ogunbayo v. Hertz Corp.*, 542 F. App'x 105, 107 (3d Cir. 2013). On the other hand, the NJLAD's anti-discrimination provision makes it unlawful for "[f]or an employer, because of race . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.J.S.A. 10:5-

12(a).  In order to establish a prima facie case of discrimination, a plaintiff must prove that: "(1) he or she belongs to a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse action occurred under circumstances that give rise to an inference of discrimination." *Davis v. City of Newark*, 285 F. App'x 899, 903 (3d Cir. 2008).

A review of Campbell's brief in support of the instant motion reveals that he is conflating what is protected under the NJLAD for the purposes of a discrimination claim and what constitutes "protected activity" for the purposes of a retaliation claim.  Campbell is correct in asserting that interracial relationships and associations are protected under the NJLAD and Title VII.  However, the NJLAD and Title VII protect interracial relationships from employer *discrimination*.  *See Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2d Cir. 2008) (holding that plaintiff sufficiently alleged *discrimination* where he claimed that he suffered an adverse employment action because of his interracial marriage); *see also O'Lone v. N.J. Dep't of Corr.*, 712 A.2d 1177, 1180 (N.J. Super. Ct. App. Div. 1998) (treating white employee as a member of a protected group, for the purpose of establishing the first prong of a *prima facie* case of *discrimination* under the NJLAD, because he was allegedly terminated for his relationship with an African-American woman).  Members of an interracial relationship or association are deemed to be a part of a "protected class" and can sustain a claim of discrimination if the remaining three prongs are established.

In the context of retaliation, however, merely engaging in an interracial relationship does not constitute "protected activity" because it is not—in and of itself—a challenge to discrimination.  *See Ogunbayo*, 542 F. App'x at 107 ("[O]nly challenges to discrimination prohibited by the NJLAD . . . constitute protected activity." (internal quotation marks omitted)); *see also Davis v. Supervalu, Inc.*, No. 13-414, 2013 WL 1704295, at *4 (D.N.J. Apr. 19, 2013) ("The filing of a worker's compensation claim, without more, is insufficient to trigger the

protections of the NJLAD . . . [because] [i]t does not involve an employee opposing a discriminatory employment practice."); *Wagoner v. Medco Health Solutions, Inc.*, No. 06-5167, 2009 WL 749572, at *7 (D.N.J. Mar. 18, 2009) (holding that taking medical leave did not constitute protected activity under the NJLAD because the plaintiff "did not oppose a practice or file, testify, or assist in any proceeding by taking her own leave").

The December 23, 2014 Opinion was consistent with this distinction. The Court did not conclude that interracial relationships fall outside the protection of the NJLAD's anti-discrimination provision. Rather, the Court concluded that interracial relationships do not constitute "protected activity" for the purpose of establishing a *prima facie* case of retaliation under the NJLAD. (Op. at 16-17). Indeed, the Court addressed Campbell's racial discrimination claim under the appropriate standard, and ultimately concluded that the undisputed facts failed to establish an adverse employment action. (*Id.* at 8-14). The Court addressed Campbell's contention that he suffered retaliation as a result of his interracial relationship under the retaliation standard, which requires that the plaintiff engage in "protected activity,"—*i.e.*, "challenges to discrimination prohibited by the NJLAD." *Ogunbayo*, 542 F. App'x at 107.

Furthermore, the record is devoid of any indication that Campbell did in fact engage in "protected activity" by challenging racial discrimination prior to filing the EEO complaint. Campbell asserts that "[b]efore the ACJC initiated an investigation regarding Plaintiff's dating relationship, and before Plaintiff filed a formal EEO complaint against Defendant, Plaintiff protested to Defendant's demands for Plaintiff's resignation." (Pl. Summ J. Br. at 19). However, this cannot be viewed as challenge to discrimination because Campbell unambiguously states that he "protested to Defendant's demands for Plaintiff's *resignation*," not discrimination. (*Id.* at 19). Furthermore, Plaintiff asserts that he did not learn of Gallipoli's alleged "racial animus" until

March 2009, when the ACJC produced discovery in the investigation. (*Id.* at 20). Based on Campbell's recitation of the facts, he could not have challeneged any alleged discrimination until March 2009—approximately one month prior to his April 4, 2009 EEO complaint. The record is completely devoid of any facts or allegations that Campbell made a challenge, of any kind, between March 2009 and April 4, 2009. Accordingly, the undisputed facts show that Campbell failed to engage in "protected activity" for the purposes of a retaliation claim prior to filing the EEO complaint.

In any event, even if the Court were to find that Campbell engaged in protected activity prior to filing the EEO complaint on April 4, 2009, the Court concludes that Campbell failed to prove an adverse employment action. In order to establish an adverse employment action under the NJLAD's anti-retaliation provision, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Roa v. Roa*, 200 N.J. 555, 575 (2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61 (2006)). However, "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* (quoting *Burlington*, 48 U.S. at 68). Indeed, "petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.* (quoting *Burlington*, 48 U.S. at 68).

Here, Plaintiff did not address how Gallipoli's alleged retaliatory actions would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *See id.* In connection with his first claim of retaliation, Campbell asserted that Gallipoli "used his influence . . . to make sure that Plaintiff would suffer discipline" by: (1) "contacting several high-

7

ranking officials . . . and falsely charactering Plaintiff's consensual dating relationship as 'totally inappropriate [sic],'" and (2) "plant[ing] a seed in the mind of the judiciary's heigharchy [sic] by suggesting that Plaintiff's dating relationship was so inappropriate that it warranted an immediate suspension and charges against Plaintiff." (Pl. Summ. J. Br. at 19). Plaintiff, however, failed to present any argument or explanation as to how Gallipoli's opinion that the relationship was inappropriate would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Roa*, 200 N.J. at 575. Indeed, the undisputed facts of the instant case reveal that Campbell was not dissuaded by Gallipoli's opinion—Campbell went on to file a discrimination complaint against Gallipoli on April 4, 2009. As such, the Court concludes that Campbell failed to establish an adverse employment action.

Accordingly, the Court concludes that Campbell fails to address any error or controlling decisions of law that were overlooked by the Court. Therefore, the Court denies Campbell's motion for reconsideration.

### B. Request for Leave to File Motion for Sanctions

In addition to his motion for reconsideration, Campbell seeks leave to file a motion for sanctions pursuant to Federal Rule of Civil Procedure 11. (D.E. No. 113). According to Campbell, Gallipoli has "intentionally and deceptively concealed an important fact from the Court regarding the Defendant's supervisory authority over Plaintiff." (Pl. Ltr. at 1). In particular, Campbell takes issue with a portion of Gallipoli's sur-reply brief, which stated that: "Judge Gallipoli was not Campbell's supervisor in an employment sense; he had no control over his working conditions or scope of employment." (D.E. No. 110, Sur-Reply Brief of Judge Maurice Gallipoli in Opposition to Plaintiff's Motion for Reconsideration at 2). Gallipoli has opposed the request. (D.E. No. 114).

8

Based on the allegations presented by Campbell, it seems questionable whether Gallipoli engaged in sanctionable conduct. Nevertheless, the Court GRANTS Campbell's request to file a motion for sanctions pursuant to Rule 11. Campbell shall have thirty (30) days from the date of this Opinion and accompanying Order to file the motion.

### III.   CONCLUSION

For the reasons stated above, the Court DENIES Plaintiff's motion for reconsideration and GRANTS Plaintiff's request for leave to file a motion for sanctions. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
